By the Court.
 

 This is a suit by Gronau for personal injuries, in which he recovered a judgment in the trial court, which was affirmed by the Court of Appeals. Error is prosecuted to this court. Desiring repairs made to a smokestack on one of its buildings, the Libbey Glass Company employed the Toledo Metal Manufacturing Company to make them. In turn, the metal company employed one Lamson to perform the work. Gronau, the injured workman, was an employe of and under the control of Lamson, the independent contractor.
 

 The building through which the smokestack emerged, because of the intense heat employed therein, had been roofed with an asbestos covering. The repairs that were to be made consisted in tightening certain guy wires, or cables, the ends of which were attached to the smokestack and fastened to the roof of the building. In the process of making these repairs, in order to reach the
 
 *405
 
 stack and guy wires, it became necessary for the employes to ascend and descend over the asbestos roof. This covering of the roof consisted of asbestos strips, which extended along the roof and were fastened to steel rafters, or furlines, underneath, which were about 3 feet apart. Because of the character of the roof it became necessary for the workman engaged, in order to avoid falling through, to confine his steps to the more solid portions of the roof where the asbestos was cleated down to the furlines.
 

 In his suit Gronau alleged that plaintiff in error negligently failed to make the roof safe for an employe going upon it for the repair work which Gronau was required to perform, and that it failed to warn Gronau of the weak condition of the roof and the insufficient support it furnished the workmen passing over it for the purpose of making such repairs.
 

 While evidence by various witnesses was offered on the part of the defendant tending to prove that warnings were given to the plaintiff, Gronau in his testimony denied that such warnings were given, but admitted that he did receive such warnings from one Casey, a foreman of Lamson, under whose orders Gronau was working at the time. Defendant had the lawful right to use an asbestos covering for its building, and in that respect the court charged that it owed the plaintiff no duty to construct the roof otherwise. Under the testimony hereafter noted and given by the plaintiff himself, we are unable to come to any other conclusion than that he failed to use ordinary care under the cir
 
 *406
 
 cumstanees, and that his own testimony precluded him from recovery.
 

 The plaintiff called Casey as a witness in his own: behalf. As stated, Casey was Lamson’s foreman and had the making of these repairs under his supervision. Just before Gronau and a fellow workman went upon the. asbestos roof to tighten the guy wires, Casey testified that he told Gronau to “watch his step” or “watch yourselves.” Gronau. admits that before starting up Casey had told him to be careful about the roof and cautioned him to be careful in respect thereto. He also testified that he knew of the composition of asbestos roofs placed on buildings, and that this roof was not as strong as a metal roof, and was not very solid. He testified that he and Kramer, Kramer leading,, ascended the roof by taking what he called the “safest way;” that in descending, áfter tightening the guy wires, Kramer again led the,;way, Gronau following. He testified that he started down after Kramer for a short distance upon the roof, but that in his descent he deviated from the route that Kramer took, stepped to one side upon the asbestos covering, and fell through to the ground below. As to his knowledge of the character of the roof and the care employed in this descent, Gronau testified as follows:
 

 “Q. Well, as a matter of fact, it didn’t look very solid to you, did it? A. Well, it looked old.
 

 " “Q. -Now answer my question directly, please; it didn’t look very solid either, did it? A. No, sir.
 

 “Q. And you knew that before you started down, didn’t you? A. Yes, sir.
 

 “Q. And you had been told to be careful? A. Yes, sir.
 

 
 *407
 
 “Q. And you now say you didn’t think anything at all about the danger or safety of the place while you were on that roof? A. No, sir.
 

 “Q. And notwithstanding that warning to be careful, and the fact you knew the roof looked old and not solid, you didn’t think about your safety in any way whatsoever when you started down that roof, did you? A. No, sir.”
 

 Because of this testimony the defendant moved for a directed verdict after plaintiff had rested. It later renewed its motion at the conclusion of all the evidence offered on the trial. It is evident from his own testimony that the plaintiff did not use the care that a man of ordinary prudence would have exercised under the same circumstances. He had testified that notwithstanding the fact that he knew the roof did not look very solid, and that he had been warned to be careful, he did not give attention to his own safety in his descent. We are of the opinion that upon the testimony of the plaintiff himself he was not entitled to recover, and that the defendant’s motion for a directed verdict should have been sustained.
 

 For the reasons assigned, the judgments of the lower courts will be reversed and judgment will be rendered in this court in favor of the plaintiff in error.
 

 Judgment reversed and judgment for plaintiff in error.
 

 Marshall, C. J., Day, Allen, Kinkade, Robinson, Jones and Matthias, JJ., concur.